EXHIBIT "A"

## AGREEMENT

This Agreement effective the 1st day of January, 2006, by and between the Sheryl Smul Grantor Annuity Trust (hereinafter referred to as the "Smul Trust"), a Florida trust, whose address is 12351 NW 2nd Street, Plantation, Florida 33325, CS-Graces, LLC (hereinafter referred to as "CS-Graces"), a New York Limited Liability Company, whose address is P. O. Box 495, Ellenville, New York 12428, and RH Lodging Services, LLC, (hereinafter referred to as "RH Lodging" or "Company"), a New York Limited Liability Company, whose address is 283 Rock Hill Drive, Rock Hill, New York 12775.

### WITNESSETH:

**WHEREAS**, RH Lodging is a Limited Liability Company duly organized and existing under and by virtue of the laws of the State of New York, as a result of the filing of Articles of Organization with the Secretary of State on May 4, 2000, and

**WHEREAS**, the sole Members of the Company are the Smul Trust and CS-Graces, each owning a 50% Membership Interest in and to the Company, and

**WHEREAS**, the rights and obligations of the Smul Trust, CS-Graces and the Company are bound and prescribed by an Amended and Restated Operating Agreement of RH Lodging Services, LLC, a New York Limited Liability Company, dated September 4, 2003, and

**WHEREAS**, the Members of CS-Graces are Joseph Tso, owning a 49% Membership Interest therein, Lana Tso, owning a 49% Membership Interest therein, Cecelia Tso, owning a 1% Membership Interest therein, and Stanley Tso, owning a 1% Membership Interest therein, and

**WHEREAS**, Alan G. Friedberg is the Guarantor of a loan by The First National Bank of Jeffersonville to D & N Management Corp. in the original principal amount of $1,300,000.00, the proceeds of which loan were used for and on behalf of the Smul Trust, and

**WHEREAS**, Joseph Tso is the President of D & N Management Corp., and

**WHEREAS**, the Smul Trust is desirous of selling and assigning all of its Membership Interest in and to the Company to CS-Graces, for the consideration and upon the terms and provisions as hereinafter provided, and

**WHEREAS**, CS-Graces is desirous of purchasing and having assigned to it all of the Membership Interest of the Smul Trust in and to the Company, for the consideration and upon the terms and conditions hereinafter provided.

**NOW, THEREFORE**, in consideration of the premises and the sum of Ten and 00/100 ($10.00) Dollars and other good and valuable consideration, the receipt of which is hereby acknowledged by the parties, and upon the terms and provisions hereinafter provided, the parties hereto hereby agree as follows:

1.     All of the aforementioned "WHEREAS" clauses are incorporated into and made a part of this Agreement, and each of the recitals and agreements therein set forth are agreed to by the parties.

2.     As partial consideration for the transfer of its 50% Membership Interest in and to the Company to CS-Graces, CS-Graces, Joseph Tso, Lana Tso and the Company hereby cancel all debts, liabilities and obligations of the Smul Trust and/or Alan G.

STOLOFF & SILVER, L.L.P. • ATTORNEYS AT LAW • 26 HAMILTON AVENUE • P.O. BOX 1129 • MONTICELLO, NEW YORK 12701

Friedberg to CS-Graces, Joseph Tso, Lana Tso and/or the Company, including but not limited to the following:

(a) Note dated December 31, 2003 from Alan G. Friedberg to Joseph Tso, in the principal sum of $1,300,000.00. The parties hereto acknowledge that said sum was borrowed by Alan G. Friedberg, on behalf of the Smul Trust, from Joseph Tso in connection with a loan of D & N Management Corp. from The First National Bank of Jeffersonville;

(b) Obligations, if any, of Alan G. Friedberg and/or the Smul Trust to the Company and/or Joseph Tso for approximately $50,000.00, representing the balance due on a loan of $100,000.00 from the RH Lodging Operating Account incurred on behalf of the Smul Trust, which debt was incurred in or about October 2004;

(c) Obligations, if any, of Alan G. Friedberg and/or the Smul Trust to C-S Graces and/or Joseph Tso for interest, charges and/or fees due on the loan of $1,300,000.00 from the First National Bank of Jeffersonville;

(d) Any and all other loans, obligations, charges and/or fees (including but not limited to hotel charges) of the Smul Trust and/or Alan Friedberg to the Company, C-S Graces, Joseph Tso and/or Lana Tso.

3. As and for additional and further consideration for the transfer by the Smul Trust to CS-Graces of the Membership Interest of the Smul Trust in and to the Company;

(a)    The Company, CS-Graces, Joseph Tso and D & N Management Corp. have, at the Company's sole cost and expense, caused the removal of Alan G. Friedberg as the Guarantor of a loan from The First National Bank of Jeffersonville to D & N Management Corp. and/or Joseph Tso in the amount of $1,300,000.00, which Guaranty was dated December 29, 2003 (a copy of which is annexed hereto as Schedule "A");

(b)    The Security Agreement dated November 17, 2003 by and between Alan G. Friedberg, the Smul Trust and Joseph and Lana Tso (a copy of which is annexed hereto as Schedule "B"), is hereby cancelled and of no further force and effect;

(c)    Prior to or simultaneously with the effective date of this Agreement, The Company, CS-Graces and Joseph Tso shall, at their sole cost and expense: (i) remove Alan G. Friedberg as the Guarantor of a loan from Hudson United Bank to the Company, in the original principal amount of $4,425,000.00, as secured by two (2) Mortgages (one by the County of Sullivan Industrial Development Agency and the Company dated July 16, 2003 and recorded in the Sullivan County Clerk's Office on July 22, 2003 in Liber 2603 of Land Records at page 247 and secured by Thompson 35-1-7.1 and 51-2-12, and the other by the Company dated July 16, 2003 and recorded in the Sullivan County Clerk's Office on July 22, 2003 in Liber 2603 of Land Records

at page 279 and secured by Thompson 35-1-4; the two Mortgages cross-collateralize the same loan of $4,425,000,00), which Guaranty is dated July 16, 2003 (a copy of which is annexed hereto as Schedule "C"), and: (ii) obtain such consent as is necessary from Hudson United Bank to: (y) any modification required in any documents of the Sullivan County IDA as a result of this Agreement and the transactions contemplated hereby, and; (z) the transfer by the Smul Trust of its Membership Interest in the Company to CS-Graces;

(d)     The Company, CS-Graces, Joseph Tso and Lana Tso hereby jointly and severally defend, hold harmless and indemnify the Smul Trust and Alan G. Friedberg with respect to the following including, but not limited to, all reasonable attorneys' fees and costs incurred in connection therewith:

(i)     The Mechanic's Lien filed by Boris Shalman, Inc. dated July 22, 2002 in the sum of $34,099.22, and the Stipulation of Settlement reached with Boris Shalman, Inc. in the action pending in the Supreme Court of the State of New York, County of Sullivan, entitled "Boris Shalman, Inc., Plaintiff, against Sullivan County Industrial Development Agency, et al", bearing Index No. 413-03, including but not limited to the Guaranty of Alan G. Friedberg contained therein, all of which

was settled and complied with as evidenced by General Release, Release from Mechanic's Lien and Stipulation Discontinuing Action, copies of which are annexed hereto as Schedule "D";

(ii)    The Mechanic's Lien filed by Milliken & Company, dated October 31, 2002 in the sum of $23,587.08, and the Stipulation of Settlement reached with Milliken & Company in the action pending in the Supreme Court of the State of New York, County of Sullivan, entitled "Boris Shalman, Inc., Plaintiff, against Sullivan County Industrial Development Agency, et al", bearing Index No. 413-03, including but not limited to the Guaranty of Alan G. Friedberg contained therein, a copy of which Mechanic's Lien is annexed hereto as Schedule "E";

(iii)    Any and all obligations and/or liabilities of all parties to and guarantors of the aforementioned loans of the Company, Joseph Tso and/or D & N Management Corp., whichever is applicable, from The First National Bank of Jeffersonville and Hudson United Bank, respectively; with respect to the loan from The First National Bank of Jeffersonville, D & N Management Corp., jointly and severally with the Company, CS-Graces, Joseph Tso and Lana Tso, also defends, holds

harmless and indemnifies the Smul Trust and Alan G. Friedberg with respect thereto, including, but not limited to, all reasonable attorneys' fees and costs incurred in connection therewith;

(iv) Any and all other obligations and/or liabilities of Alan G. Friedberg and/or the Smul Trust to the Company, CS-Graces, D & N Management Corp., Joseph Tso, Lana Tso, and/or any other third party not specifically referred to hereinabove.

(e) The Company, Joseph Tso, Lana Tso and D & N Management Corp. each severally agree that they will each cooperate with Alan G. Friedberg and/or the Smul Trust, including but not limited to the provision of appropriate financial documentation (including but not limited to financial statements, profit and loss statements and/or tax returns), in the event of any application by Alan G. Friedberg, the Smul Trust and/or any other person or entity for a loan, mortgage and/or credit in connection with which any loans or guaranties of Alan G. Friedberg and/or the Smul Trust and/or the indemnity of Alan G. Friedberg and/or the Smul Trust in connection with any loan or guaranty, are in issue.

(f) The Company hereby grants to Robert A. Berman and/or his assign a right of first refusal, for ten (10) years from the date effective date of this Agreement, to purchase (i) the real property (or any portion

thereof) beneficially owned by the Company (it is owned by the County of Sullivan Industrial Agency and leased to the Company in connection with a PILOT Agreement) and more commonly described as Town of Thompson tax map parcel nos. 35-1-7.1 and 51-2-12 and (ii) the Company or any interest therein. In the event the Company receives a bona fide offer for the purchase of all or a portion of the aforementioned real property and/or a bonafide offer to purchase the Company or any interest therein, the Company shall provide to Robert A. Berman (and his assign if the Company has received Notice that any such right has been assigned) a copy of all relevant documentation pertaining to such offer (including but not limited to copies of Purchase Offers, Contracts, Letters of Intent, Purchase Agreements, etc.) within ten (10) business days of the Company's receipt of same, in the same manner as Notice is required to be given pursuant to this Agreement, after which Robert A. Berman and his assign (if applicable) shall have forty-five (45) days within which to exercise his right of first refusal and purchase on the same terms as set forth in the offer received by the Company. If the right of first refusal is not exercised within the aforementioned time period, the right of first refusal with respect to such offer shall lapse and be of no further force or effect. If the Company does not close on such offer and thereafter receives another offer, the right of first refusal

shall continue to exist with respect to any other or new offer. If the right of first refusal is exercised, the closing shall take place within sixty (60) days of the exercise of such right of first refusal. In the event that the consent of the County of Sullivan Industrial Development Agency and/or any other entity is require in order to effectuate the terms and provisions of this paragraph, the parties hereto shall cooperate to obtain same. Robert A. Berman shall have the right to prepare and record with the Sullivan County Clerk, at his sole cost and expense, a Memorandum of this provision of the Agreement as to the right of first refusal, which the parties agree to execute upon request.

4.     The parties acknowledge that, due to the fact that the performance of this Agreement will result in a change of control of the Company, the consent of the Sullivan County IDA shall also be required. The parties shall cooperate to obtain the consent of the Sullivan County IDA and the Company, C-S Graces and Tso shall pay all costs and fee associated therewith. In connection therewith, the parties further acknowledge that the Loan Agreement with Hudson United Bank also provides that in the event there is any modification, supplement, etc. to any Sullivan County IDA documents that the consent of Hudson United Bank is also required (see paragraph 5.9 of said Loan Agreement). Further, Paragraph 20 (k) (iii) of each Mortgage with Hudson United Bank appears to provide that said Bank must consent to any transfer of any interest in the Company. All costs and expenses (including but not limited to reasonable attorneys' fees

and disbursements) incurred in connection with the foregoing shall be borne by the Company, C-S Graces and/or Tso.

5. At the present time, Alan G. Friedberg and Robert Wong maintain offices at the Lodge, which is the hotel owned and operated by the Company. The parties agree that Alan G. Friedberg and Robert Wong shall continue to be able to maintain offices at the Lodge, at no cost and expense to them, through and including thirty (30) days after the effective date of this Agreement.

6. On or before or simultaneously with the effective date of this Agreement, the Smul Trust shall execute any and all other documents reasonably required by CS-Graces to effectuate the transfer of the entire Membership Interest of the Smul Trust in and to the Company to CS-Graces.

7. All of the parties and signatories hereto hereby represent to each other and to the other signatories to this Agreement that the execution and delivery of this Agreement, and any and all other documents executed or to be executed in connection herewith, do not violate any statute or regulation applicable to any of them, are valid, legal, binding and enforceable obligations of each of said parties and will not conflict with or result in any breach in any provisions of, or constitute a default under, any agreement to which any of said entities is a party.

8. On or before or simultaneously with the effective date of this Agreement, CS-Graces and the Company shall deliver to the Smul Trust and Alan G. Friedberg duly executed resolutions authorizing the execution of this Agreement and affirming the terms and provisions hereof.

9.   Alan G. Friedberg hereby expressly agrees as follows:

(a)   that he will prepare (or cause to be prepared), assist in the preparation (if required), and cause to be filed the 2005 Federal and State Tax Returns of the Company, prior to the expiration of any extensions of time to do so, the cost to prepare and file same being borne by the Company;

(b)   that he shall remove all of his personal property and affects, as set forth in Schedule "F" annexed hereto, within thirty (30) days after the effective date of this Agreement;

(c)   that he shall cause to be turned over to CS-Graces any and all corporate books and records of the Company in his possession or in the possession of the Smul Trust, simultaneously with his execution of this Agreement.

10.   This Agreement is binding upon the heirs, personal representatives, successors, transferees and assigns of the parties hereto.

11.   This Agreement contains the entire understanding and agreement of the parties with respect to the subject matter hereof. Any prior understandings or agreements of the parties with respect to the subject matter hereof are of no further force and effect except to the extent that they are expressly set forth herein.

12.   This Agreement shall be construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

STOLOFF & SILVER, L.L.P.   •   ATTORNEYS AT LAW   •   26 HAMILTON AVENUE   •   P.O. BOX 1129   •   MONTICELLO, NEW YORK 12701

13. Any dispute arising out of this Agreement shall be decided solely by a Court of competent jurisdiction located within Sullivan County, to which each party and signatory hereby consents to the jurisdiction thereof, sitting without a jury, which each party and signatory hereby voluntarily waives the right to request and/or receive.

14. The parties hereto acknowledge that this Agreement was the product of negotiations between all of the parties and signatories hereto and/or their counsel and that, accordingly, any ambiguity in any term or provision shall not be construed in favor of or against any party or signatory hereto.

15. This Agreement may not be modified, changed, altered, amended, supplemented, waived, terminated, cancelled and/or rescinded, in whole or in part, except by a writing executed by the parties and signatories hereto.

***IN WITNESS WHEREOF***, the parties and signatories hereto hereby execute this Agreement the day and year first above written.

**SHERYL SMUL GRANTOR ANNUITY TRUST**

By: _____
        Sheryl Smul, Trustee

**CS-GRACES, LLC**

By: _____
        Joseph Tso, Member

**RH LODGING SERVICES, LLC**

By:     CS-Graces, LLC, Member

        By: _____
                Joseph Tso, Member

-12-

STOLOFF & SILVER, LLP • ATTORNEYS AT LAW • 26 HAMILTON AVENUE • P.O. BOX 1129 • MONTICELLO, NEW YORK 12701

_Alan G. Friedberg, Individually_

_Joseph Tso, Individually_

_Lana Tso, Individually_

**D & N MANAGEMENT CORP.**

By: _____
        _Joseph Tso, President_

STOLOFF & SILVER, LLP. • ATTORNEYS AT LAW • 26 HAMILTON AVENUE • P. O. BOX 1129 • MONTICELLO, NEW YORK 12701

# GUARANTY

In order to induce THE FIRST NATIONAL BANK OF JEFFERSONVILLE, (hereinafter "Bank") to extend credit and in its discretion to grant other financial accommodations to JOSEPH TSO, having an address of PO Box 495, Ellenville, New York 12428 (hereinafter "Debtor") and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned (hereinafter "Guarantor") does hereby unconditionally guarantee to Bank, its successors and assigns, the due and punctual payment, performance and discharge of any and all amounts payable to Bank by Debtor in accordance with certain note and mortgage in the principal amount of One Million Three Hundred Thousand Dollars ($1,300,000.00) executed and delivered by Debtor to Bank, and all renewals and extensions thereof (all such debts, obligations and liabilities being hereinafter collectively referred to as the "Indebtedness"). Guarantor further agrees to pay to Bank all expenses (including attorneys' fees) paid or incurred by Bank in endeavoring to collect all or any part of the Indebtedness and in enforcing this Guaranty.

Guarantor does hereby expressly waive: notice of acceptance hereof; notice of the extension of credit from time to time given by Bank to Debtor and the creation, existence or acquisition of any Indebtedness hereby guaranteed; notice of the amount of the Indebtedness of Debtor to Bank from time to time, subject, however, to the right of Guarantor to make inquiry of Bank at any reasonable time to ascertain the amount of the Indebtedness; notice of any adverse change in Debtor's financial condition or of any fact which might increase the risk of Guarantor, including without limitation notice of any adverse change in the condition or value of any collateral securing all or any part of the Indebtedness; notice of presentment for payment, demand, protest and notice thereof as to any instrument; notice of default; notice of nonpayment, partial payment, and protest of any extension of time of payment granted to Debtor; and all other notices and formalities to which Guarantor might otherwise be entitled. Guarantor further waives: the right to trial by jury in any action hereunder; any and all rights by statute or otherwise to require Bank to institute suit against Debtor or to exhaust its rights and remedies against Debtor or others before calling upon Guarantor to satisfy the Indebtedness; any defense arising by reason of any set off, recoupment or counterclaim of Debtor that would reduce the amount of the Indebtedness which Debtor is required to pay to Bank; any duty on the part of Bank to ascertain the nature or extent of any collateral securing all or any portion of the Indebtedness, or any insurance or other rights respecting such collateral; all diligence in the protection or realization upon any collateral securing the Indebtedness.

Guarantor understands and agrees that his liability hereunder shall be primary and immediate, and shall not be contingent upon the exercise of enforcement by Bank of whatever remedies it may have against Debtor or others, or the enforcement of any lien or realization upon any security Bank may at any time possess, and this Guaranty shall continue in full force and effect until revoked in writing by Guarantor, his heirs, executors, administrators, personal representatives, successors and assigns and a copy of such revocation has been duly delivered to Bank by certified or registered mail, but such revocation shall not affect or impair the obligation of Guarantor, his heirs, executors, administrators, personal representatives, successors and assigns with respect to any of the Indebtedness, existing at the time of the receipt by Bank of such revocation, or to arise out of or in connection with any transactions theretofore entered into by Bank, with or for the account of Debtor, or any renewals or extensions of all or any portion of the Indebtedness (whether or not such renewals or extensions are made before or after Bank's receipt of such revocation), or any expenses (including attorneys' fees) paid or incurred by Bank in endeavoring to collect all or any portion of the Indebtedness. If this Guaranty is signed by more than one Guarantor, then any such revocation shall be effective as set forth hereinabove with respect to the Guarantor who gives notice of such revocation and such

revocation shall not affect or impair the obligations of any other Guarantor.

Guarantor consents and agrees that, without notice to or by Guarantor and without affecting or impairing the liability of Guarantor hereunder, Bank may, from time to time: compromise, settle, release, renew, extend the period of duration or the time for the payment or discharge of any or all of the Indebtedness; may refuse to enforce or may release all or any parties to any and all of the Indebtedness; may grant other indulgences to Debtor or others in respect of the Indebtedness; may amend or modify in any manner any documents or agreements relating to the Indebtedness (other than this Guaranty) and may hereafter enter into new agreements for which any or all of the Indebtedness may arise; may release, surrender, exchange, substitute, modify or impair any and all deposits and other property securing the Indebtedness or on which Bank may at any time have a lien; may refuse to enforce its rights, or may make any compromise or settlement or agreement therefor, in respect of any and all of such deposits and property, or with any party to the Indebtedness, or with any other person, firm or corporation whatsoever; may release or substitute any one or more of the endorsers or guarantors of the Indebtedness, whether parties to this Guaranty or not; may exchange, enforce, waive or release any security for any guaranty of the Indebtedness; and may call upon Guarantor to pay all or any part of the Indebtedness without being required to prosecute collection, enforcement or other remedies against Debtor or others who may be primarily or secondarily liable for all or any portion of the Indebtedness. Nothing shall discharge or satisfy the liability of Guarantor hereunder except the full performance and payment of the Indebtedness without deduction by reason of set off, defense or counterclaim.

Any and all present and future debts and obligations of Debtor to Guarantor are hereby postponed in favor of and subordinated to the full payment of the Indebtedness by Debtor to Bank, and, as additional security for this Guaranty, Guarantor hereby assigns to Bank all claims of any nature which Guarantor may now or hereafter have against Debtor. Until all of the Indebtedness shall have been paid in full, Guarantor shall have no right or subrogation, indemnity or reimbursement whatsoever and no right of recourse against or with respect to any assets or property of Debtor.

Guarantor hereby represents that he is fully aware of the financial condition of Debtor and delivers this Guaranty based solely upon his own independent investigation and in no part upon any representation or statement of Bank with respect thereto. Guarantor is in a position to and hereby assumes full responsibility for obtaining any additional information concerning Debtor's financial condition as he may deem material to his obligations hereunder, and Guarantor is not relying upon or expecting Bank to furnish him with any information in Bank's possession concerning Debtor's financial condition.

Guarantor represents, warrants and covenants to Bank as an inducement to Bank to grant credit to Debtor that, as of the date of this Guaranty, the fair saleable value of his assets exceeds his liabilities and that he is able to pay and does pay his liabilities as same mature; that the financial statement heretofore delivered to Bank accurately states his financial condition as of the date hereof; that all financial statements heretofore and hereafter furnished by him to Bank are and will be true and correct; that since the date of the financial statement last furnished by him to Bank there has been no material adverse change in his financial condition; that he will furnish Bank statements of his financial condition as of December of each year on a form identical to the form heretofore used; that he shall immediately give Bank written notice of any material adverse change in his financial condition, including but not limited to notice of litigation commenced, tax liens filed, defaults claimed under contracts and bankruptcy proceedings commenced by or against him and that he shall at such reasonable times as Bank requests furnish his current financial statements to Bank.

If Debtor shall dissolve or suspend its business operations, or if a proceeding is commenced by or

against Debtor or any Guarantor under any provision of the federal bankruptcy laws, or if a receiver, trustee, or other custodian shall be appointed for any part of the assets of Debtor or any Guarantor, or if Debtor or any Guarantor shall make an assignment for the benefit of their respective creditors, or if Debtor shall be in default under any present or future agreement with Bank, then whether or not any such event shall occur at a time when any of the Indebtedness is otherwise due and payable, Bank may at its option and without notice declare the full amount of the Indebtedness to be due and payable and Guarantor agrees to pay to Bank upon demand the full amount of the Indebtedness as if the full amount thereof were then past due.

Any amount received by Bank from whatever source and applied by it toward the payment of the Indebtedness shall be applied in such order of application as Bank may from time to time elect.

No delay or failure on the part of Bank to exercise any right or remedy shall operate as a waiver thereof and no single or partial exercise by Bank of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

This Guaranty shall inure to the benefit of Bank, its successors and assigns, and shall be binding upon Guarantor, his heirs, executors, administrators, personal representatives, successors and assigns. If this Guaranty is signed by more than one Guarantor, then the term "Guarantor" as used herein shall be considered to be in the plural and each such Guarantor and their respective heirs, executors, administrators, personal representatives, successors and assigns shall be jointly and severally bound by and liable under all of the terms, covenants and conditions of this Guaranty. Notwithstanding the foregoing, the extent of each guarantor's liability under this Guaranty is limited to the percentage set forth after his or its name. As used herein, the words "he," "him," or "his" shall mean "she" or "her" as the context may require.

This Guaranty, all acts and transactions hereunder and the rights and obligations of the parties hereto, shall be governed, construed and interpreted according to the laws of the State of New York. Where possible each provision of this Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, Guarantor, intending to be legally bound hereby, has signed and delivered this Guaranty, the _____ day of December, 2003.

Alan Friedberg (Guarantor)
926 Fifth Avenue
New York, New York 10021

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF _____    )

On the 29th day of December, 2003, before me, the undersigned, personally appeared ALAN FRIEDBERG, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Morris Brafman
Notary Public in the State
of New York: Sullivan Co #891
Commission Expires 12/31/ 03

## AGREEMENT

This agreement dated as of the 17th day of November, 2003 (the "Agreement") among Alan. G. Friedberg ("Friedberg"), with a principal address of 926 Fifth Avenue, New York, New York; the Sheryl Smul Grantor Annuity Trust (the "Trust"), with a principal address of 12351 NW 2nd Street, Plantation, Florida; and Joe and Lana Tso ("Tso"), with a principal address of 47 North Main Street, Ellenville, New York.

## RECITALS

WHEREAS, Friedberg and Tso have entered into a loan agreement dated _____, 2003 with Hudson United Bank ("HUB") for a loan in the amount of $1,250,000;

WHEREAS, it is agreed that Tso shall receive the proceeds of the loan and Friedberg shall execute the loan agreement as co-borrower; and

WHEREAS, it is agreed that Tso shall transfer the proceeds of the loan to Friedberg.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, to induce Tso to execute, deliver and perform the loan agreement and the other loan documents and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Friedberg and Tso each hereby agree as follows:

1.   **Grant of Security.** Friedberg and the Trust hereby grant Tso a continuing security interest in all of their interest in RH Lodging Services, LLC, a limited liability company organized under the laws of the state of New York, with its principal place of business at 283 Rock Hill Drive, Rock Hill, New York (the "Lodge"), and all personal property and fixtures, whether now or hereafter existing or now owned or hereafter acquired (including without limitation, all equipment, furniture, fixtures, machines, building materials and items of personal property at any time and from time to time acquired by The Lodge) and wherever located; of every kind and description, tangible and intangible (the "Collateral"), including, without limitation, the following:

(a)   All equipment in all of its forms, wherever located, including, without limitation, all machinery and other goods, furniture, furnishings, fixtures, office supplies and other tangible personal property and all parts thereof and all accessions thereto, together with all parts, fittings, special tools, alterations, substitutions, replacements and accessions thereto;

(b)   All inventory in all of its forms, wherever located, including, without limitation, (i) all supplies, goods, incidentals, packaging materials and all other items which contribute to the finished product or to the promotion or sale thereof (ii) all raw materials and work in process, finished goods, and materials used or consumed in

manufacture or production, (iii) goods in which the Lodge or the Trust has an interest in mass or a joint or other interest or right of any kind (including, without limitation, goods in which the Lodge or the Trust has an interest or right as consignee), and (iv) goods which are returned to or repossessed by the Lodge or the Trust, and, with respect to all of the foregoing, all additions thereto, substitutions therefor, accessions thereto and products thereof and (collectively, the "Inventory"), all documents and documents of title, whether relating to or covering any of the foregoing, or otherwise;

(c)     All accounts, contract rights, chattel paper, instruments, acceptances, notes, drafts, acceptances and other forms of obligations of any kind, now or hereafter existing, whether or not arising out of or in connection with the sale or lease of goods or the rendering of services, including, without limitation, all rents of property of the Lodge or the Trust and fees, charges, accounts, or other payments for the use and occupancy of rooms and other public facilities in the Lodge, all within the meaning of Section 552(b)(2) of the United States Bankruptcy Code (collectively, the "Receivables"), together with all ledger sheets, files, records and documents relating to any of the foregoing, including all computer records, programs, storage media and computer software useful or required in connection therewith, and all rights now or hereafter existing in and to all supporting obligations, security agreements, leases, and other contracts securing or otherwise relating to any Receivables;

(d)     All rights under all contracts and agreements to which the Lodge or the Trust is a party, including, without limitation, all contracts and agreements;

(e)     All trademarks, trade styles, designs, patents, copyrights, licenses, license agreements, and any applications for patents or trademarks, including, without limitation, in connection with such trademarks, trade styles, designs, patents, copyrights, licenses, licenses agreements, and any applications for patents or trademarks, any and all reissues, divisions, continuations, reexaminations, renewals, derivative works, and extensions thereof (whether in whole or in part), any and all rights corresponding thereto throughout the world, and the good will of the business to which each relates, including, without limitation, filings, applications, registrations and recordings in the United States Patent and Trademark Office or in any similar office or with any other Governmental Authority, together with the goodwill associated therewith (collectively, the "Intellectual Property Collateral");

(f)     All motor vehicles and trailers (the "Motor Vehicles");

(g)     All deposit accounts;

(h)     All general intangibles and payment intangibles, including, without limitation, good will and tax refunds;

(i)     All rights and claims in or under any policy of insurance, including, but not limited to, insurance for fire, damage, loss and casualty, whether covering real property or personal property, or tangible or intangible property;

(j)     All other personal property of the Lodge or the Trust, including,

without limitation, all other accounts, goods, documents, instruments, general intangibles, investment property (including, without limitation, all securities, security entitlements, securities accounts, commodity contracts and commodity accounts), letters of credit, letter-of-credit rights, money, deposit accounts and chattel paper; and

(k)     All books and records (whether computerized or in any other form or medium), proceeds of any and all of the foregoing Collateral (including, without limitation, proceeds which constitute property of the types described in clauses (a) through (j) of this Section 2 or any other type of property or assets) and, to the extent not otherwise included, all payments under insurance (whether or not the Secured Party is the loss payee or additional insured thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the Collateral and products, renewals, replacements, substitutions, additions, accessions, rents, issue, royalties and profits of any and all of the foregoing Collateral, in all cases whether now owned or hereafter acquired or arising.

2.    Collateral for Loan.  Tso agrees to collateralize the loan with HUB by pledging real property known as Riverside Estates, a 120-acre(±) planned unit development located at Avon Lodge Road, Town of Fallsburg, New York.

3.    Interest Payments.  Friedberg agrees to pay Tso an amount of interest on the loan equal to 10% per annum minus the interest payable to HUB. Specifically, the interest charged by HUB will be the prime rate plus 1% payable monthly, and Tso shall receive from Friedberg the difference between such interest payment to HUB and 10%, payable monthly.

4.    Tso's Right to Perform; Right to Protect Collateral.  If Friedberg or the Trust fails to perform any agreement contained herein, Tso may themselves perform or cause performance of such agreement, and the expenses incurred in connection therewith shall be payable by Friedberg.

5.    Notices.  Except as otherwise expressly provided in this Agreement, any notice, request, demand or other communication permitted or required to be given hereunder shall be in writing.

6.    Entire Agreement.  This Agreement contains the entire agreement with respect to the subject matter hereof and supersedes all prior agreements, written or oral, with respect thereto.

7.    **GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL AND CERTAIN OTHER WAIVERS.**

(a)    **THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW). FRIEDBERG AND THE TRUST EACH**

HEREBY SUBMITS TO THE JURISDICTION OF ANY COURT OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY SUIT, ACTION, OR OTHER PROCEEDING ARISING OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, WHICH IS BROUGHT BY OR AGAINST IT, (I) IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT, (II) TO THE EXTENT THAT IT HAS ACQUIRED, OR HEREAFTER MAY ACQUIRE, ANY IMMUNITY FROM JURISDICTION OF ANY SUCH COURT OR FROM ANY LEGAL PROCESS THEREIN, SUCH IMMUNITY IS HEREBY WAIVED TO THE FULLEST EXTENT PERMITTED BY LAW AND (III) AGREES NOT TO COMMENCE ANY ACTION, SUIT OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY TRANSACTION EXCEPT IN SUCH COURT. THE DEBTOR HEREBY WAIVES, AND EACH AGREES NOT TO ASSERT IN ANY SUCH SUIT, ACTION OR PROCEEDING, IN EACH CASE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT (A) IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF ANY SUCH COURT, (B) IT IS IMMUNE FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT ATTACHMENT IN AID OF EXECUTION, EXECUTION OR OTHERWISE) WITH RESPECT TO IT OR ITS PROPERTY (AND FURTHER IRREVOCABLY AGREES THAT SERVICE OF PROCESS AND ALL OTHER LEGAL PROCESS MAY BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THE LOAN AGREEMENT AND THAT SUCH SERVICE SHALL BE SUFFICIENT FOR ALL PURPOSES OF APPLICABLE LAW), OR (C) JURISDICTION OR VENUE FOR ANY SUCH SUIT, ACTION OR PROCEEDING IS IMPROPER OR THAT ANY SUCH SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM.

(b)      FRIEDBERG AND THE TRUST EACH HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT AND ALSO WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO CLAIM OR RECOVER ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.

(page intentionally ends here)

IN WITNESS WHEREOF, Friedberg, the Trust and Tso have each signed the Agreement as of the date first above written.

ALAN G. FRIEDBERG

SHERYL SMUL GRANTOR ANNUITY TRUST

_____
Sheryl Smul, Trustee

JOSEPH AND LANA TSO

_____
Joe Tso

_____
Lana Tso

IN WITNESS WHEREOF, Friedberg, the Trust and Tso have each signed the Agreement as of the date first above written.

ALAN G. FRIEDBERG

_____

SHERYL SMUL GRANTOR ANNUITY TRUST

_____
Sheryl Smul, Trustee

JOSEPH AND LANA TSO

_____
Joe Tso

_____
Lana Tso

### KOOPERMAN, KOOPERMAN & TSO, P. C.
#### Counselors at Law
#### P. O. Box 511
#### 47 North Main Street
#### Ellenville, New York  12428

**Joseph Tso**

Telephone:  (845) 647-4110
Fax:  (845) 647-6232

*********************************************************************

### FACSIMILE TRANSMITTAL COVER SHEET

Date: _Nov. 17, 2003_          Fax No. _212) 396-4938_

TO: _Alan Friedberg_

FROM: _Joe Tso_

RE: _R H Lodging Services, LLC loan agreement_

NUMBER OF PAGES INCLUDING THIS PAGE: _____

### IF YOU DO NOT RECEIVE ALL MATERIALS SENT,
### PLEASE CALL (845) 647-4110

MEMO: _Alan. Lana + I signed it. Please sign it_
_fax it to Sheryl to sign + you sign it so we_
_can quickly have a completed agreement ASAP._
_Call me Thurs if needed._

Original will follow by mail _____

Original will NOT follow by mail _____

### ******* CONFIDENTIALITY NOTE *******

The documents accompanying this telecopy transmission contain information from Kooperman, Kooperman & Tso, P. C. which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this telecopied information is prohibited. If you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

## GUARANTY

THIS GUARANTY, dated July 16, 2003, by the undersigned (the "Guarantor") in favor of and for the benefit of HUDSON UNITED BANK, a New Jersey state chartered bank (the "Bank").

## RECITALS

WHEREAS, RH Lodging Services, LLC (the "Borrower") and the Bank have entered into a Term Loan Agreement dated the date hereof ( as the same may be amended, modified, supplemented and/or renewed from time to time, the "Loan Agreement"); and

WHEREAS, it is a condition to the making of the Loan under the Loan Agreement that the Guarantor guaranty payment and performance of all Guaranteed Obligations (as hereinafter defined).

NOW, THEREFORE, to induce the Bank to make the Loan under the Loan Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agrees as follows:

1.     Defined Terms.  Capitalized terms used but not defined herein shall have their respective meanings as set forth in the Loan Agreement.

2.     Guaranty.  (a) The Guarantor unconditionally and irrevocably guarantees to the Bank the full and punctual payment and performance by the Borrower, when due, whether at the stated due date, by acceleration or otherwise, of all Obligations of the Borrower, howsoever created, arising or evidenced, voluntary or involuntary, whether direct or indirect, absolute or contingent now or hereafter existing or owing to the Bank, (collectively, the "Guaranteed Obligations"). This Guaranty is an absolute, unconditional, continuing guaranty of payment and not of collection of the Guaranteed Obligations and includes Guaranteed Obligations arising from successive transactions which shall either continue such Guaranteed Obligations or from time to time renew such Guaranteed Obligations after the same has been satisfied.  This Guaranty is in no way conditioned upon any attempt to collect from the Borrower or upon any other event or contingency, and shall be binding upon and enforceable against the Guarantor without regard to the validity or enforceability of the Loan Agreement, the Notes, the Security Agreement or any other Loan Document or of any term or provision of any thereof.  If for any reason the Borrower shall fail or be unable, for any reason whatsoever, duly and punctually to pay any of the Guaranteed Obligations (including, without limitation, interest on the Guaranteed Obligations and other amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), and interest that but for the filing of a petition in bankruptcy with respect to the Borrower or any other obligor in respect of the Guaranteed Obligations would accrue on such obligations,), the Guarantor will forthwith pay the same, in cash, immediately upon demand.

(b)     In the event the Loan Agreement, the Note, any other Loan Document, or any other document or instrument shall be terminated as a result of the rejection thereof by any trustee, receiver or liquidating agent of the Borrower or any of its properties in any bankruptcy, insolvency, reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar proceeding, the Guarantor's obligations hereunder shall continue to the same extent as if such Loan Agreement, Note, other Loan Document, or other document or instrument had not been so rejected.

(c)     Without limiting the generality of any other term or provision of this Guaranty, the Loan Agreement or any of the Loan Documents, the Guarantor shall pay all liabilities, obligations, claims, amounts, costs, expenses (including, without limitation, attorneys' fees and disbursements) and damages incurred in connection with the enforcement of the Obligations of the Borrower under the Loan Agreement or the Note or any other Loan Document, and such liabilities, obligations, claims, amounts, costs, expenses (including, without limitation, attorneys' fees and disbursements) and damages incurred in connection with the enforcement of the obligations of the Guarantor under this Guaranty.

(d)     The Guarantor further agrees that if any payment made by the Borrower or the Guarantor to the Bank on any Obligation is rescinded, recovered from or repaid by the Bank, in whole or in part, in any bankruptcy, insolvency or similar proceeding instituted by or against the Borrower or the Guarantor, this Guaranty shall continue to be fully applicable to such Guaranteed Obligation to the same extent as though the payment so recovered or repaid had never originally been made on such Guaranteed Obligation.

(e)     If any Event of Default shall have occurred, the Bank and each Affiliate of the Bank are each hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Bank, or such Affiliate of the Bank to or for the credit or the account of the Guarantor against any of and all the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not the Bank shall have made any demand hereunder and although such obligations may be unmatured.  The rights under this paragraph 1(e) are in addition to other rights and remedies (including other rights of set off) which the Bank may have.

(f)     No payment or payments made by the Borrower, any other guarantor, Loan Party or any other Person, or received or collected by the Bank from the Borrower, any other guarantor, Loan Party or any other Person, whether by way or any action, suit or proceeding, or any set-off, appropriation of application, or otherwise, at any time or from time to time, in reduction of or in payment of the Guaranteed Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of the Guarantor hereunder, who shall remain liable for all Guaranteed Obligations from time to time until the Guaranteed Obligations are fully and finally paid and performed and the Loan

Agreement and the other Loan Documents shall have been terminated as acknowledged in writing by the Bank.

3. **Guaranty Continuing, Absolute, Unlimited.** The obligations of the Guarantor hereunder shall be continuing, absolute, unlimited and unconditional, shall not be subject to any counterclaim, set-off, deduction or defense based upon any claim the Guarantor may have against the Bank or the Borrower or any other Person, and shall remain in full force and effect without regard to, and, to the fullest extent permitted by applicable law, shall not be released, discharged or in any way affected by, any circumstance or condition (whether or not the Guarantor shall have any knowledge or notice thereof) whatsoever which might constitute a legal or equitable discharge or defense of a guarantor or surety, including, but not limited to, (a) any express or implied amendment, modification or supplement to the Loan Agreement, any Note, or any other Loan Document or any other agreement referred to in any thereof, or any other instrument applicable to the Borrower or to the Loan, or any part thereof; (b) any failure on the part of the Borrower to perform or comply with the Loan Agreement, any Note or any other Loan Document or any failure of any other Person to perform or comply with any term of the Loan Agreement, any Note, or any other Loan Document or any other agreement as aforesaid; (c) any waiver, consent, change, extension, indulgence or other action or any action or inaction under or in respect of the Loan Agreement, any Note, or any other Loan Document or any other agreement as aforesaid, whether or not the Bank, the Borrower or the Guarantor has notice or knowledge of any of the foregoing; (d) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or similar proceeding with respect to the Borrower, or its properties or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding; (e) any furnishing or acceptance of additional security or any release of any security; (f) any limitation on the liability or obligations of the Borrower under the Loan Agreement, any Note or any other Loan Document or any termination, cancellation, frustration, invalidity or unenforceability, in whole or in part, of the Loan Agreement, any Note, this Guaranty or any other Loan Document or any term of any thereof; (g) any Lien on or affecting the Guarantor's or the Borrower's assets and properties; (h) any act, omission or breach on the part of the Bank under the Loan Agreement, any Note or any other Loan Document or any other agreement at any time existing between the Bank and the Borrower or any Requirement of Law, or other agreement applicable to the Bank or any Loan; (i) any claim as a result of any other dealings among the Bank, the Guarantor or the Borrower; (j) the assignment of this Guaranty, the Loan Agreement, any Note or any other Loan Document by the Bank to any other Person; or (k) any change in the name of the Bank, the Borrower or any other Person referred to herein.

4. **Waivers.** (a) The Guarantor unconditionally waives, to the fullest extent permitted by applicable law: (i) notice of any of the matters referred to in Section 3 hereof; (ii) all notices which may be required by statute, rule of law or otherwise to preserve any rights against the Guarantor hereunder, including, without limitation, notice of the acceptance of this Guaranty, or the creation, renewal, extension, modification or accrual of the Guaranteed Obligations or notice of any other matters relating thereto, any presentment, demand, notice of dishonor, protest, nonpayment of any damages or other

amounts payable under the Loan Agreement, any Note or any other Loan Documents; (iii) any requirement for the enforcement, assertion or exercise of any right, remedy, power or privilege under or in respect of the Loan Agreement, any Note or any other Loan Documents, including, without limitation, diligence in collection or protection of or realization upon the Guaranteed Obligations or any part thereof or any collateral thereof; (iv) any requirement of diligence; (v) any requirement to mitigate the damages resulting from a Default or Event of Default under the Loan Agreement, any Note or any other Loan Documents; (vi) the occurrence of every other condition precedent to which the Guarantor or the Borrower may otherwise be entitled; (vii) the right to require the Bank to proceed against the Borrower or any other Person liable on the Guaranteed Obligations, to proceed against or exhaust any security held by the Borrower or any other Person, or to pursue any other remedy in the Bank power whatsoever; and (viii) the right to have the property of the Borrower first applied to the discharge of the Guaranteed Obligations.

(b)     The Bank may, at its election, exercise any right or remedy it may have against the Borrower, without affecting or impairing in any way the liability of the Guarantor hereunder and the Guarantor waives, to the fullest extent permitted by applicable law, any defense arising out of the absence, impairment or loss of any right of reimbursement, contribution or subrogation or any other right or remedy of the Guarantor against the Borrower, whether resulting from such election by the Bank or otherwise. The Guarantor waives any defense arising by reason of any disability or other defense of the Borrower or by reason of the cessation for any cause whatsoever of the liability, either in whole or in part, of the Borrower to the Bank for the Guaranteed Obligations.

(c)     The Guarantor assumes the responsibility for being and keeping informed of the financial condition of the Borrower and of all other circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations and agrees that the Bank shall not have any duty to advise the Guarantor of information regarding any condition or circumstance or any change in such condition or circumstance. Each Guarantor acknowledges that the Bank has not made any representations to the Guarantor concerning the financial condition of the Borrower.

5.     <u>Representations and Covenants of the Guarantor</u>.  The Guarantor hereby represents and warrants that the representations and warranties contained in Article IV of the Loan Agreement, to the extent they relate to the Guarantor, are true and correct as of the date hereof and the Guarantor further agrees that the Bank is entitled to rely on such representations and warranties to the same extent as though the same were set forth in full herein.

6.     <u>Payments</u>. Each payment by the Guarantor to the Bank under this Guaranty shall be made in the time, place and manner provided for payments in the Loan Agreement without set-off or counterclaim to the account and/or address at which such payment is required to be paid by the Borrower under the Loan Agreement.

7.     <u>Parties</u>. This Guaranty shall inure to the benefit of the Bank and its successors, assigns or transferees, and shall be binding upon the Guarantor and his heirs,

executors, administrators, legal representatives, successors and assigns; provided, that the Guarantor may not assign this Guaranty, nor delegate any of his duties under this Guaranty without the prior written consent of the Bank, which consent may be withheld in the Bank's sole discretion.

8.   Notices. All notices, requests, consents, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been given (i) upon receipt when personally delivered or when sent by telegram, telecopy or telex, or (ii) if mailed, on the third day following the day sent by certified or registered mail, return receipt requested, postage prepaid, in each case addressed as follows (or to such other address as may be designated by notice given pursuant to this Section 8):

| The Guarantor: | Alan G. Friedberg<br>P.O. Box 858<br>283 Rock Hill Drive<br>Rock Hill, New York 12775-6620 |
|---|---|
| With a copy to: | Leonard H. Bloom<br>926 Fifth Avenue<br>New York, NY 10021 |
| The Bank: | Hudson United Bank<br>90 Broad Street<br>New York, New York 10004-2290<br>Attention: Mr. Richard Assaf, Vice President |
| With a copy to: | Jenkens & Gilchrist Parker Chapin LLP<br>The Chrysler Building<br>405 Lexington Avenue,<br>New York, New York 10174<br>Attention: William D. Freedman, Esq. |

Notwithstanding the foregoing, notices to the Bank shall not be effective until received by it.

9.   Remedies. The Guarantor stipulates that the remedies at law in respect of any default or threatened default by the Guarantor in the performance of or compliance with any of the terms of this Guaranty are not and will not be adequate, and that any of such terms may be specifically enforced by a decree for specific performance, without the necessity of posting a bond or other form of security, or by an injunction against violation of any such terms or otherwise.

10.   Rights to Deal with the Borrower. At any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of the Guarantor hereunder, the Bank may deal with the Borrower in the same manner and as fully as if this Guaranty did not exist and shall be entitled, among other things, to grant the Borrower, without notice or demand and without affecting the Guarantor's liability

hereunder, such extension or extensions of time to perform, renew, compromise, accelerate or otherwise change the time for payment of or otherwise change the terms of indebtedness or any part thereof contained in or arising under the Loan Agreement, any Note or any other Loan Documents, or to waive any obligation of the Borrower to perform, any act or acts as the Bank may deem advisable.

11.     Subrogation.  The Guarantor shall not be entitled to be subrogated to any of the rights of the Bank against the Borrower or any other Person or any collateral security for any of the Guaranteed Obligations, nor shall the Guarantor be entitled to or seek any contribution or reimbursement from the Borrower or any other Person until the full and complete indefeasible payment and performance of all Guaranteed Obligations and the termination of the Loan Agreement and all Loan Documents as acknowledged in writing by the Bank. If any amount shall be paid to the Guarantor on account of any subrogation, contribution and/or reimbursement rights at any time prior to such full and final payment, and termination, such amount shall be held by the Guarantor in trust for the Bank, segregated from the other funds of the Guarantor and shall immediately deliver such amounts, in the exact form received, with any necessary endorsements, if requested by the Bank) to the Bank to be applied to the Guaranteed Obligations in such order and manner as the Bank shall determine.  Any claims of the Guarantor against the Borrower arising from payments made or actions taken by such Guarantor, pursuant to the provisions of this Guaranty shall be in all respects subordinate to the full and complete indefeasible payment and performance of all amounts, obligations and liabilities, the payment or performance and discharge of which are guaranteed by this Guaranty, and no payment hereunder by a Guarantor shall give rise to any claim of such Guarantor against the Bank.  In addition, any and all subrogation, contribution and reimbursement rights of the Guarantor shall be suspended upon the occurrence of the events described in Section 1(d) until the full, complete and indefeasible payment of the Guaranteed Obligations and the termination of the Loan Agreement and all Loan Documents as acknowledged in writing by the Bank.

12.     Survival of Representations and Warranties.    All representations, warranties, covenants and agreements made herein, including representations and warranties incorporated by reference and/or deemed made herein, shall survive any investigation or inspection made by or on behalf of the Bank and shall continue in full force and effect until all of the obligations of the Guarantor under this Guaranty shall be fully paid and performed in accordance with the terms hereof, and until the full and final payment of the Guaranteed Obligations and the termination of the Loan Agreement and all Loan Documents as acknowledged in writing by the Bank.

**13.     GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL AND CERTAIN OTHER WAIVERS.   (a)   THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW). THE GUARANTOR HEREBY SUBMITS TO THE JURISDICTION OF ANY COURT OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY**

OR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK FOR THE PURPOSE OF ANY SUIT, ACTION, OR OTHER PROCEEDING ARISING OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, WHICH IS BROUGHT BY OR AGAINST HIM, (I) IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT, (II) TO THE EXTENT THAT HE HAS ACQUIRED, OR HEREAFTER MAY ACQUIRE, ANY IMMUNITY FROM JURISDICTION OF ANY SUCH COURT OR FROM ANY LEGAL PROCESS THEREIN, SUCH IMMUNITY IS HEREBY WAIVED TO THE FULLEST EXTENT PERMITTED BY LAW AND (III) AGREES NOT TO COMMENCE ANY ACTION, SUIT OR PROCEEDING RELATING TO THIS GUARANTY OR ANY TRANSACTION EXCEPT IN SUCH COURT.  THE GUARANTOR HEREBY WAIVES, AND AGREES NOT TO ASSERT IN ANY SUCH SUIT, ACTION OR PROCEEDING, IN EACH CASE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT (A) HE IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF ANY SUCH COURT, (B) HE IS IMMUNE FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT ATTACHMENT IN AID OF EXECUTION, EXECUTION OR OTHERWISE) WITH RESPECT TO HIM OR HIS PROPERTY (AND FURTHER IRREVOCABLY AGREES THAT SERVICE OF PROCESS AND ALL OTHER LEGAL PROCESS MAY BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF SECTION 8 OF THIS GUARANTY AND THAT SUCH SERVICE SHALL BE SUFFICIENT FOR ALL PURPOSES OF APPLICABLE LAW), OR (C) JURISDICTION OR VENUE FOR ANY SUCH SUIT, ACTION OR PROCEEDING IS IMPROPER OR THAT ANY SUCH SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM.

      **(b)**    THE GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING IN CONNECTION WITH THIS GUARANTY. THE GUARANTOR ALSO WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO CLAIM OR RECOVER ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES.  THE GUARANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVERS ARE A MATERIAL INDUCEMENT TO THE BANK'S EXECUTION, DELIVERY AND PERFORMANCE OF THE CREDIT AGREEMENT AND THE OTHER LOAN DOCUMENTS AND THAT THE BANK IS RELYING ON THE FOREGOING WAIVERS IN ITS PRESENT AND FUTURE DEALINGS WITH THE BORROWERS, THE GUARANTOR, AND THEIR RESPECTIVE AFFILIATES.

    14.   <u>Miscellaneous</u>.  (a) This Guaranty contains the entire agreement with respect to the subject matter hereof and supersedes all prior agreements, written or oral, with respect thereto.

      (b)    This Guaranty may be amended, superseded, cancelled, renewed or extended, and the terms hereof may be waived, only by a written instrument signed by the Guarantor and consented to in writing by the Bank, or, in the case of a waiver, only by a

written instrument signed by the Bank.

(c)     No delay on the part of the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of the Bank of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any further exercise thereof or the exercise of any other such right, power or privilege. The rights and remedies herein provided are cumulative and shall not preclude the Bank from seeking any other remedy available, whether pursuant to applicable law or otherwise.

(d)     Every provision of this Guaranty is intended to be severable. If any term or provision of this Guaranty shall be or be held to be invalid, illegal or unenforceable for any reason whatsoever, the validity, legality and enforceability of the remaining provisions hereof or thereof shall not in any way be affected or impaired thereby.

(e)     All section titles or captions contained in this Guaranty are for convenience only, shall not be deemed a part of this Guaranty and shall not affect the meaning or interpretation of this Guaranty. All references herein to Sections shall be deemed references to such parts of this Guaranty, unless the context shall otherwise require.

IN WITNESS WHEREOF, the undersigned has signed this Guaranty as of the day and year first above written.

_____
Alan G. Friedberg, Guarantor

# SCHEDULE "D"

General Release by Corporation

## To all to whom these Presents shall come or may Concern,
Know That *BORIS SHALMAN, INC.,*

A corporation organized under the laws of the State of New York as Releasor, in consideration of the sum of *THIRTY-FOUR THOUSAND NINETY-NINE AND 22/100 ($34,099.22) DOLLARS* received from *R.H. LODGING SERVICES, LLC, ALLEN FRIEDBERG,* and *PHILIP FRIEDBERG,* as Releasees, receipt whereof is hereby acknowledged, releases and discharges *R.H. LODGING SERVICES, LLC, ALLEN FRIEDBERG, and PHILIP FRIEDBERG,* the Releasee, Releasee's heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the Releasee, the Releasor, Releasor's successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release.

The words "Releasor" and Releasee" include all releasors and all releasees under this Release.

This release may not be changed orally.

In Witness whereof, the Releasor has caused this Release to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on the ___12th___ day of ___July___, 2005, in presence of

                                        BORIS SHALMAN, INC.,

                                        By: _John Dolland_

State of New York        )
                         )  ss.:
County of _Sullivan_     )

On _July 12_, 2005 before me, the undersigned, a Notary Public in and for said State, personally appeared ___John Dollard___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                                        _Karen Skinner_
                                        Notary Public, State of New York

                        KAREN SKINNER
                    Notary Public, State of New York
                     Sullivan County Clerk's #2408
                    Commission Expires April 21, _2007_

W:\4SS86\1\RMC6881.WPD

## RELEASE FROM MECHANIC'S LIEN

KNOW ALL MEN BY THESE PRESENTS THAT,

WHEREAS, BORIS HALMAN, INC., did heretofore and on the 23rd day of July, 2002, file in the office of the Clerk of the County of Sullivan a certain notice of mechanic's lien, dated and verified the 22nd day of July, 2002 as Case No. 153-02 against the interests of the Record Owner and Lessor, SULLIVAN COUNTY INDUSTRIAL DEVELOPMENT AGENCY, and Equitable Owner and Lessee, R.H. Lodging Services, LLC, as owners of certain real property therein mentioned, described as follows:

Premises situated in the Town of Thompson, County of Sullivan, the State of New York, being Tax Map Parcel, Section 35, Block 1, Lot 7.1 and Tax Map Parcel, Section 51, Block 2, Lot 12, commonly known as 283 Rock Hill Road, being the same premises disclosed in a certain deed dated June 9, 2000 from Frontier Insurance Group, Inc. to R.H. Lodging Services, LLC and recorded in the Sullivan County Clerk's office on June 12, 2000 in Liber 2193 of Deeds at Page 639.

NOW, THEREFORE, in consideration of THIRTY-FOUR THOUSAND NINETY-NINE AND 22/100 ($34,099.22) DOLLARS in hand paid to said BORIS SHALMAN, INC., lienor, with an office as aforesaid, it hereby does release the lien of the above described Notice of Mechanic's Lien.

IN WITNESS WHEREOF, the said lienor does hereunder set his hand and seal this 12th day of July , 2005.

BORIS SHALMAN, INC.

By _____
John Dollard, President

STATE OF NEW YORK
                            SS.:
COUNTY OF SULLIVAN

On July 12 , 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared John Dollard, President of Boris Shalman, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

W:\55586\1\RMC6885.WPD

KAREN SKINNER
Notary Public, State of New York
Sullivan County Clerk's #2408
Commission Expires April 21. 2007

SUPREME COURT OF THE STATE OF NEW YORK          *Index No.* 413-03
COUNTY OF SULLIVAN
------------------------------------------------

BORIS SHALMAN, INC.,

                                   Plaintiff,

          -against-                                      **STIPULATION
SULLIVAN COUNTY INDUSTRIAL DEVELOPMENT          DISCONTINUING ACTION**
AGENCY, R.H. LODGING SERVICES, LLC, ALLEN
FRIEDBERG, and PHILIP FRIEDBERG, ELLENVILLE
NATIONAL BANK as Mortgagee, COUNTY
DRAPERIES, INC., Lienor and MILLIKEN &
COMPANY, Lienor,

                                   Defendants.
------------------------------------------------

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the

attorneys of record for all the parties to the above entitled action, that whereas no party hereto is a

infant, incompetent person for whom a committee has been appointed or conservatee and no

person not a party has an interest in the subject matter of the action, the above entitled action be,

and the same hereby is discontinued, without costs to either party as against the other. This

stipulation may be filed without further notice with the Clerk of the Court.

Dated: _____, 2005

_____                    _____
AMANDA B. BRADY, ESQ.                            HENRI SHAWN, ESQ.
Jacobowitz & Gubits, LLP                         Law Office of Henri Shawn, Esq.

*Attorneys for Defendants,* R. H. Lodging        *Attorney(s) for Plaintiffs*
Services. LLC, Allen Friedberg and Philip
Friedberg

158 Orange Avenue                                North Street Professional Building
P.O. Box 367                                     30 North Street
Walden, New York 12586                           P.O. Box 1320
(845) 778-2121                                    Monticello, New York 12701
                                                 (845) 791-7676

CHRISTOPHER A. CARDILLO, ESQ.
Damon & Morey, LLP
Attorneys for defendant, Milliken &
Company
1000 Cathedral Place
298 Main Street
Buffalo, New York 14202-4096
(716) 856-5500

W:\63586:1\RMC6889.WPD